**JIM FORNO'S CONTINENTAL MOTORS, INC., Plaintiff,**

v.

**SUBARU DISTRIBUTORS CORP., Goldstein Motors, Inc., Trice-Juron Ford, Inc. and Subaru of America, Inc., Defendants.**

**No. 86–CV–186.**

United States District Court, N.D. New York.

Dec. 11, 1986.

Helm Shapiro Anito & Aldrich, Albany, N.Y., for plaintiff; Matthew E. Moloshok, of counsel.

Schwartz Klink & Schreiber, New York City, for defendant Subaru Distributors Corp.; Dale E. Schreiber, of counsel.

Bond, Schoeneck & King, Syracuse, N.Y., for defendant Subaru of America, Inc.; Edward R. Conan, of counsel.

Maney McConville and Liccardi, East Greenbush, N.Y., for defendant Goldstein Motors, Inc.; Edward P. McConville, East Greenbush, N.Y., Verner Liipfert Bernhard McPherson & Hand, Washington, D.C., of counsel.

Ianiello Keniry Pettijean Anderson & Reilly, Clifton Park, N.Y., for defendant Trice-Juron Ford, Inc.; Ross A. Pettijean, of counsel.

## MEMORANDUM–DECISION & ORDER

McCURN, District Judge.

Pending before the court are various motions to dismiss the complaint in the instant action. In determining whether to dismiss the complaint, this court is required to read the complaint as a whole, accept its material allegations, and draw all inferences in the plaintiff's favor. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Yoder v. Orthomolecular Nutrition Institutes, Inc.*, 751 F.2d 555, 558 (2d Cir.1985). Such a reading of the complaint yields the following summary.

Plaintiff, Jim Forno Continental Motors, Inc. (Forno), is an automobile dealer incorporated in New York and doing business in Endicott, New York. Forno was a Subaru franchisee between 1971 and 1984. Defendant, Subaru Distributors Corporation (SDC), is a New York corporation having its principal place of business in Orangeburg, New York. SDC is, and was at the times relevant to this action, one of fifteen regional distributors of Subaru vehicles. Defendant Subaru of America (SOA) is, and was at the times relevant to this action, the exclusive American importer of Subaru vehicles. Defendants, Goldstein Motors, Inc. (Goldstein), and Trice-Juron Ford, Inc. (Trice-Juron) are, and were at the times relevant to this action, Subaru franchisees. Goldstein and Trice-Juron are New York corporations having their principal places of business in New York.

SOA imported Subarus into the United States during the relevant times. SOA delivered vehicles to its regional distributors, including SDC. SDC in turn delivered Subarus to Forno, Goldstein, Trice-Juron and at least 50 other local dealers. SDC's delivery to the local dealers was governed by contract.

The American consumers' demand for Subarus far exceeded the supply at times relevant to the case at hand. This shortage resulted in part from the consumers' desire to purchase fuel efficient vehicles from Japan, and in part from Japanese manufacturers' voluntary restriction of exports to the United States. Because of the shortage, SOA promulgated a policy for determining allocations among the regional distributors. The policy, called the "earned share system", provided that vehicles would first be allocated to distributors who had dealers with unfilled customer sales agreements. Vehicles were then allocated to distributors based on their respective dealers' "travel rate" or "day's supply". The "travel rate" or "day's supply" was a function of inventory and sales potential. For example, if a dealer sold ten cars per day on the average, and he had a one hundred car inventory, he had a ten day "travel rate" or ten "day's supply". The distributors with lower "travel rates" or "day's supply" were allocated more vehicles than other distributors.

SDC determined to allocate vehicles to its dealers using an allocation system similar to that imposed by SOA. SDC's allocation system is alleged, however, to have been "informal and subject to abuse". (See Complaint ¶ 41.) It is the "abuse" of the SDC "earned share system" which forms the basis for all of the plaintiff's claims.

The system was allegedly abused in that SDC solicited dealers, including Forno, Trice-Juron and Goldstein to falsely report sales. (See Complaint ¶ 45.) The false reporting of sales was designed to lower the inventory and thereby lower the "day's supply" of the dealers *and* SDC, consequently entitling SDC and the dealers to an allocation level from SOA that would other-

wise have not been available. Forno allegedly declined SDC's invitiation to falsify sales, while Goldstein and Trice-Juron allegedly did submit such false sales reports. Such abuse occurred on a regular basis over a five year period despite SOA's knowledge. Forno asserts that SOA and SDC did nothing to curb the submission of false reports. Rather, they allegedly "engaged in lulling activities promising to ... clean up the system," with no intention of doing so. (See Complaint ¶ 56, 66 & 113.)

Forno asserts that the abuse resulted in an increase in the vehicles available from SOA to SDC and dealers like Trice-Juron and Goldstein, who falsified sales at SDC's encouragement, and a decrease of vehicles available to dealers like Forno, who did not falsify sales. The decrease in vehicles available allegedly hurt Forno to the extent that it had to sell its franchise.

Forno claims that seven causes of action arise from the foregoing facts. Count I claims that SDC breached its dealer agreement with Forno to "fairly and equitably allocate vehicles to Forno". Count II asserts a tort of "unfair competition" against SDC. Count III alleges a civil RICO claim under 18 U.S.C. §§ 1964 and 1962(c) against SDC, Goldstein and Trice-Juron. Count IV avers that the conduct of SDC, Goldstein and Trice-Juron constituted a contract, combination or conspiracy in restraint of trade in violation of section one of the Sherman Act, 15 U.S.C. § 1. Forno claims in Count V that Goldstein and Trice-Juron tortiously interfered with Forno's contract with SDC. Count VI avers a claim of "enterprise liability" against SOA. Finally, Count VII asserts a state law fraud claim against SOA and SDC.

The case initiated by Forno's complaint has generated several motions by defendants and plaintiff alike. Several of these motions were disposed by this court at oral argument. Count VI was dismissed because the court determined that New York law did not recognize the claim of "enterprise liability" as asserted by the plaintiff. Count VII avers that SDC and SOA represented to Forno that they would prevent

the kind of abuse of the "earned share system" complained of in this action. The court dismissed this count because it asserts a breach of contract claim, if anything. Although one who makes a contractual promise with the undisclosed intention to breach it can be held liable for fraud, *Soper v. Simmons International Ltd.*, 632 F.Supp. 244, 249 (S.D.N.Y.1986), a purely conclusory allegation, such as the one here, that defendants never intended to perform cannot convert a claim for breach of contract into one for fraud. *Federal Deposit Insurance Corp. v. Borne*, 599 F.Supp. 891 (E.D.N.Y.1984).[1]

Discovery was stayed pending the resolution of the issues currently before the court, except that Trice-Juron, which had not complied with any discovery requests of the plaintiff, was ordered to comply with such requests. SDC's motion for Rule 11 sanctions was denied. The court reserved on the motions to dismiss plaintiff's federal claims contained in Counts III and IV, and to dismiss the pendent state claims in Counts I, II and V. The court has considered these motions and determines as follows.

## A. RICO

■ Plaintiff's Count III is based on 18 U.S.C. § 1964 which provides a civil remedy for, among other things, a violation of 18 U.S.C. § 1962(c).[2] 18 U.S.C. § 1962(c) provides:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Defendants SDC and Goldstein have moved to dismiss this portion of the complaint on several grounds. For the reasons discussed below, this court determines that each of these grounds is without merit.[3]

### 1. Enterprise

■ The court disagrees with the movants' claim that the plaintiff has failed to adequately identify an "enterprise" and a "person associated with any enterprise" within the ambit of 18 U.S.C. § 1962(c). In this circuit an "enterprise" may be proved with evidence of a group of individuals or organizations associated in-fact who share a common purpose and function as a continuing unit. *See United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir.), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). From the plaintiff's papers it is *not* apparent that there is no set of facts to

1. The court's dismissal of Count VII is effective against both defendants SOA and SDC, even though SDC did not move to dismiss on grounds other than lack of subject matter jurisdiction. This court has the power to dismiss a claim under Fed.R.Civ.P. 12(b)(6) *sua sponte. Cook v. Bates*, 92 F.R.D. 119 (S.D.N.Y.1981). Although fairness may in some instances dictate that notice should be given before a court dismisses *sua sponte* under Fed.R.Civ.P. 12(b)(6) [*see Brosnan v. Lutheran General Hospital*, 85 C 08756 (N.D.Ill.1986) [Available on WESTLAW, DCTU database] (available on Lexis, Genfed Library)], here such notice is unnecessary because it was effectively provided by SOA's motion to dismiss Count VII.

2. Count III provides:
   The acts and practices of SDC and the Dealer Defendants aforesaid of this Complaint constitute a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1962(c) in that:

   (a) the submission of false reports of sale by means of the mails and wires are indictable, *inter alia*, under 18 U.S.C. §§ 1341 and 1343;
   (b) the conduct was ongoing and involved a related series of submissions of false reports of sale by means of the mails and the wires; and
   (c) the business conducted by SDC and the Dealer Defendants, in the course of which such acts were committed, involves an effect upon interstate commerce.
   (See Complaint ¶ 80).

3. This court agrees with counsel of defendant SDC that this case, sounding in common law contract and tort, should not belong in federal court. It is Congress' expansive drafting of the RICO statutes that has put it here, however. *Sedima v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346 (1985). This court cannot dismiss, without further factual development, a complaint such as the one here which states a claim under the broad sweep of RICO.

support its claim. Paragraph 4 of the complaint specifically alleges that "SDC knew of, and was active in initiating or encouraging, [false reporting by the dealer defendants]." A fair reading of the complaint reveals the plaintiff's claim that the dealer defendants and SDC were associated in-fact and shared a common goal of submitting false reports to boost *both* SDC's and the dealers allocation of vehicles from SOA.

It is of no moment that the evidence required to prove the alleged predicate acts, mail and wire fraud, is the same as that required to prove the existence of the enterprise. The "proof used to establish the pattern of racketeering activity element may in particular cases coalesce with the proof offered to establish the enterprise element of RICO." *Mazzei*, 700 F.2d at 89. The Second Circuit has found that a group of jockeys and bettors connected only by their common interest in profiting from illegally fixed races, satisfied the RICO enterprise element. *See United States v. Errico*, 635 F.2d 152, 156 (2d Cir.1980), *cert. denied*, 453 U.S. 911, 101 S.Ct. 3142, 69 L.Ed.2d 994 (1981). Here, a distributor and a group of dealers connected by their interest in falsifying sales reports can similarly satisfy the RICO enterprise element.

Having determined that the plaintiff adequately identified an "enterprise", the court must next determine whether a "person employed by or associated with any enterprise" has been identified. 18 U.S.C. § 1961(3) defines "person" as "any individual or entity capable of holding a legal or beneficial interest in property." It is clear that SDC and the dealer defendants qualify as such persons. It is equally clear that the complaint alleges that SDC and the dealer defendants are associated with the previously described enterprise. The complaint has adequately identified the RICO "person" element.

### 2. *Pattern of Racketeering Activity*

■ Count III alleges that the defendants' operation of the "earned share" system resulted in use of the mails and wires in violation of 18 U.S.C. §§ 1341 and 1343 respectively.[4] Violations of these sections are "predicate racketeering activities" under 1961(1)(B). To assert mail or wire fraud, the plaintiff must allege that the defendant (1) knowingly participated in a scheme to defraud and (2) knowingly used the mails or the wires to further the scheme. *United States v. Rodolitz*, 786 F.2d 77, 80 (2d Cir.1986).

The movants assert that the complaint does not establish a "scheme to defraud". They claim that the complaint asserts no misrepresentation in that it implies that all parties involved knew about the sales falsification scheme. The movants reading of the complaint may in fact be justified. A reading that implies that the defendants schemed to defraud SOA and Forno is

4. 18 U.S.C. §§ 1341 and 1343 provide:

§ 1341. Frauds and swindles

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more that $1,000 or imprisoned not more than five years, or both.

§ 1343 Fraud by wire, radio, or television

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

equally justified, however. A thorough reading of the entire complaint reveals that the plaintiff has alleged that SDC and the dealer defendants used the mails and the wires to misrepresent sales figures to SOA in order to obtain more vehicles than they would have otherwise been entitled to at the expense of dealers like the plaintiff, who did not falsify sales reports. Therefore, the complaint adequately alleges the racketeering activity of violation of the mail and wire fraud statutes.

The complaint also adequately alleges a "pattern" of racketeering activity. 18 U.S.C. § 1961(5) provides:

> (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter [enacted Oct. 15, 1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity; ...

It cannot be questioned that plaintiff adequately asserts at least two acts of racketeering activity within the statutory time period as required by § 1961(5). Plaintiff asserts that such activity occurred continuously and regularly through the period 1979 to 1984.

The Supreme Court in *Sedima, S.P.L.R. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346, however, implied that while two acts are necessary, they may not be sufficient. *Id.* at 3285, n. 14. The Court noted that it is "continuity plus relationship that combines to produce a pattern." *Id.* The movants here claim that the plaintiff's complaint does not satisfy the "continuity"

requirement of a "pattern". The movants rely on a line of cases that stand for the proposition that *Sedima's* "continuity" element requires that the predicate racketeering acts alleged in the complaint must have occurred in "different criminal episodes". *See e.g. Richter v. Sudman*, 634 F.Supp. 234 (S.D.N.Y.1986) (several acts necessary to carry out single investment fraud scheme did not constitute a "pattern"); *Frankart Distributors v. RMR Advertising, Inc.*, 632 F.Supp. 1198 (S.D.N.Y.1986) (several fraudulent mailings with regard to a single advertising contract did not constitute a pattern); *Soper v. Simmons International, Ltd.*, 632 F.Supp. 244 (S.D.N.Y. 1986) (multiple acts to deprive plaintiffs of one commission did not constitute a "pattern"). District Judge Shadur described the "different criminal episode" concept in *Northern Trust Bank/O'Hare, N.A. v. Inryco Co., Inc.*, 615 F.Supp. 828 (1985):

> "[P]attern" ... connotes a multiplicity of events. Surely the continuity inherent in the term presumes repeated criminal activity, not merely repeated acts to carry out the same criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity." *Id.* at 831.

The movants argue that the false sales reports alleged here were merely repeated acts to carry out the same criminal activity, the scheme to fraudulently affect the allocation of Subaru vehicles.

The Second Circuit has not spoken on the "different criminal episode" concept espoused by the Southern District of New York and other courts.[5] This court con-

---

5. The Second Circuit has recently spoken about footnote 14 of the Supreme Court's *Sedima* opinion, which has precipitated the new found judicial interest in RICO's pattern requirement. In *United States v. Teitler*, 802 F.2d 606 (2d Cir.1986), the court observed in a criminal case, "[t]he most stringent reading of footnote 14 would require that the prosecution show the same or similar purposes, results, participants, victims, or methods of commission. *Id* at 611, citing *Sedima* 105 S.Ct. at 3285, n. 14." Although this observation is directed to the "relationship" prong of the Supreme Court's "continuity plus relationship" test, it does indicate that

the Second Circuit may be hesitant to impose new requirements such as the one for "different criminal episodes" on the statutory definition of pattern. The Second Circuit may be particularly hesitant since the Seventh Circuit, whose position was affirmed in *Sedima*, recently determined that the separate criminal episode requirement "focuses excessively on continuity, and therefore cannot be accepted as a general rule." *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986). In so doing, the court noted: "Otherwise defendants who commit a large and ongoing scheme, albeit a single scheme, would

cludes, however, that even if the concept were adopted, the complaint here would still adequately allege a pattern of racketeering activity. Those cases where the courts have determined that only one criminal episode is present have generally involved schemes which posed no threat of ongoing activity. In each case there was "a distinct and easily defined beginning and end to the transaction at issue ..., and all of the alleged predicate offenses, the multiple mailings, [were] merely part of this single transaction." *Frankart,* 632 F.Supp. at 1201. As soon as the criminal object was attained, the episode would end. In *Frankart,* for example, the complaint alleged that the defendants charged excessive rates for the duration of a six month contract. There was a distinct beginning and end to the episode. By the terms of the contract, the fraud could last no longer than six months. In *Richter,* the complaint alleged four fraudulent transactions in an investment scheme. As soon as the defendants successfully used fraud to induce the plaintiffs to invest, the fraud would cease.

Here, there is no distinct end to the episode. The alleged fraud could have continued as long as Forno remained a franchisee and the "earned share system" was in place. The only thing that stopped the fraud, as far as Forno is concerned, was Forno's exit from the Subaru market. There is also no incentive to stop the fraud. In fact, the reverse is true. The attainment of the criminal object of more vehicles than a participant is entitled to would only encourage further false reporting. There is a threat of continuous or ongoing activity. For this reason, and for the reasons expressed in note 5, the court determines that the complaint has adequately alleged a "pattern" of racketeering activity.

### 3. *Nexus*

18 U.S.C. § 1962(c) condemns the conduct of an enterprise's affairs "through" a pattern of racketeering activity. There-

fore, the courts have determined that a complaint must allege an adequate nexus between the racketeering activity and the enterprise's affairs. The Second Circuit has articulated the following test:

> [O]ne conducts the activities of an enterprise through a pattern of racketeering when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise. Simply committing predicate acts which are unrelated to the enterprise or one's position within it would be insufficient.

*United States v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). *See also United States v. Provenzano,* 688 F.2d 194, 200 (3d Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982).

Fairly read, the instant complaint alleges that the acquiescence and/or encouragement of the false reporting by SDC was instrumental in getting the dealer defendants to report falsely, and that false reporting by the dealer defendants was necessary to permit SDC to report falsely to SOA. Therefore, a sufficient allegation has been made that the individual defendants were "enabled to commit the predicate offenses solely by virtue of their positions in the enterprise."

### 4. *F.R.C.P. 9(b)*

It is settled that the pleading of predicate acts for a RICO claim must meet the particularity requirements of Rule 9(b), where the acts are based in fraud. *Rich-Taubman Associates v. Stamford Restaurant,* 587 F.Supp. 875, 878–79 (S.D.N.Y. 1984). The movants, however ask this court to impose those requirements in a manner reminiscent of the archaic "code pleading" practice which strangled the courts in earlier times. We deny the invitation.

F.R.C.P. 9(b) provides:

automatically escape RICO liability for their

acts, an untenable result." *Id.*

In all averments of fraud and mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

"Circumstances" have been defined to include such matters as the time, place and contents of false representations, as well as the identity of the persons making the representation and what was obtained or given up thereby. *Hudson v. Larouche,* 579 F.Supp. 623, 628 (S.D.N.Y.1983), citing *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). In requiring such "circumstances" to be pleaded, this court recognizes that Rule 9(b) requires only sufficient particularity to permit a defendant to frame a responsive pleading. *Rich Taubman,* 587 F.Supp. at 880. Moreover, this court should require less specificity when many of the relevant facts are solely within the defendants' knowledge. *Id.*

Here, the complaint sufficiently apprises the defendants of the allegations against them so that they can make a responsive pleading. Forno's complaint identifies the nature of the scheme to defraud; the time period in which it occurred; the relationships of the participants to one another; the method by which the fraud was perpetrated; the nature and subject matter of the fraudulent misrepresentations; and the purpose for which SDC and the dealer defendants initiated and continued the scheme. The fact that the complaint does not specifically detail the persons and times associated with each false report made by the dealer defendants and SDC is not fatal. This information is most likely in the hands of the movants themselves. To require the plaintiff to plead it would be exalting form over substance.

**B.** *Antitrust*

The plaintiff has alleged a violation of the Sherman Act, 15 U.S.C. § 1 which provides, in pertinent part:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal.

The movants here assert this claim is deficient in that: (1) the complaint fails to adequately allege a "contract, combination, or conspiracy", and (2) the complaint fails to adequately allege a restraint of trade.

For the reasons basic to this court's prior determination that plaintiff has adequately alleged an "enterprise" the court determines that a "contract, combination or conspiracy" has been adequately alleged. "To establish an unlawful combination or conspiracy, there must be evidence that two or more parties have knowingly participated in a common scheme or design." *Contractor Utility Sales Co. v. Certain-teed Products Corp.,* 638 F.2d 1061, 1074 (7th Cir. 1981). Here, the plaintiff has alleged that SDC and the dealer defendants were involved in a scheme to submit false sales reports over a five year period. Such an allegation sufficiently alleges a "contract, combination or conspiracy".

■ The court cannot find, however, that the complaint adequately alleges a restraint of trade. On its face, Section 1 of the Sherman Act prohibits every "restraint of trade". The courts have construed this provision, however, as prohibiting only those combinations which *unreasonably restrain competition.* *Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1283 (7th Cir.1983). Some types of conduct are considered *per se* unreasonable. Activities that have been accepted as *per se* offenses are price fixing, group boycotts, market allocation, and certain types of tying agreements. *See Bunker Ramo,* 713 F.2d at 1284. The hallmark of a *per se* offense is that the practice at issue appears on its face to be one that would almost always act to restrict competition within a market. *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,* 441 U.S. 1, 19–20, 99 S.Ct. 1551, 1562, 60 L.Ed.2d 1 (1979).

The practice in question here is not a *per se* offense. *See Gregoris Motors v. Nissan Motor Corp.*, 630 F.Supp. 902 (S.D.N.Y.1986). Forno alleges that his allocation of vehicles decreased due to the alleged practice. Such a result is not always anti-competitive. Other dealers' allocations in Forno's area may have also decreased. If that is so, competition should stay the same. Since the plaintiff has not adequately alleged a *per se* unreasonable restraint of trade, we must determine if he has adequately alleged a restraint of trade under the "rule of reason". *Id.* Under the rule of reason, the plaintiff must demonstrate a precise harm caused by the defendants' activities. That harm must be a restraint on competition, not merely damage to a competitor. *Id.* To adequately allege a restraint of trade under the rule of reason the plaintiff must at least suggest the size of the relevant product and geographic markets, the amount of competition foreclosed, and how the acts of the defendants affected that competition. *Bustop Shelters, Inc. v. Convenience and Safety Corp.*, 521 F.Supp. 989, 997 (S.D.N.Y.1981). The plaintiff's attempt at alleging injury to competition is contained in paragraph 87:

> The actions of the co-conspirators had the effect of unreasonably limiting the supply of "Subaru" vehicles in the markets served by non-participating dealers, including Forno, and foreclosed a substantial amount of commerce.

Such conclusory allegations are insufficient in an antitrust complaint. The plaintiff has tried to resurrect his complaint by citing *Federal Trade Commission v. Indiana Federation of Dentists*, — U.S. —, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986) for the proposition that no allegation of anticompetitive effect is necessary if the challenged action has no "procompetitive" effect. We think the plaintiff reads *Indiana Federation* too broadly. But even if *Indiana Federation* does stand for that proposition, we do not believe that the challenged action, as a matter of law, could have no procompetitive effect.

### C. *Pendent State Claims*

The motions to dismiss the state law claims contained in Counts I, II and V are contingent on this court dismissing both federal claims. The court has refused to dismiss the RICO claim. Therefore, the court retains jurisdiction over the pendent state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

For the foregoing reasons, the motion to dismiss Count IV is granted. The motions to dismiss Counts I, II, III and V are denied.

IT IS SO ORDERED.