CAPITAL IMAGING ASSOCIATES, P.C., Plaintiff,

v.

MOHAWK VALLEY MEDICAL ASSOCIATES, INC., and Mohawk Valley Physicians' Health Plan, Inc., Defendants.

No. 88–CV–1291.

United States District Court, N.D. New York.

Nov. 28, 1989.

Cooper Erving Savage Nolan & Heller, Albany, N.Y. (Mark E. Watkins, of counsel), for plaintiff.

Epstein Becker & Green, New York City (Linda V. Tiano, of counsel), Clifford E. Barnes, Washington, D.C., for defendants.

### MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

#### I. Background

##### A. Parties

Plaintiff, Capital Imaging Associates, P.C. ("Capital"), is one of only two private radiology practices offering a full range of diagnostic imaging services in an extensive region around Albany, New York, including parts of southern Vermont and western Massachusetts. It is a major regional health care facility with annual gross re-

ceipts of $3,800,000, approximately 14% of which are reimbursed by Medicare. Plaintiff's only competitor is Two Rivers Radiology, a private radiology practice with offices located across the street from plaintiff in Latham, a community in northern Albany County, New York. Although Two Rivers is not a party to this case, it is under contract with the defendants' health insurance plan to provide a specialized radiological procedure known as Magnetic Resonance Imaging ("MRI"). It is this relationship between Two Rivers and defendants which is the foundation for plaintiff's allegations.

Defendant, Mohawk Valley Medical Associates ("Associates") is an independent practice association ("IPA") of member physicians organized to provide medical care to enrollees of defendant Mohawk Valley Physicians Health Plan, Inc. ("MVP"). The defendants together constitute an example of an IPA–model health maintenance organization ("HMO") in which an HMO (MVP) contracts with an organization of physicians (Associates) to provide physician services to the HMO members in the individual physician member offices.

### B. *Complaint*

Plaintiff invokes the jurisdiction of this court under the provisions of Sections 4 and 16 of the Clayton Act, 15 U.S.C. Sections 15 and 26 [1], to recover treble damages for and obtain injunctive relief from defendants' violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. Sections 1 and 2 [2], and the costs of this suit including reasonable attorney's fees.

Plaintiff's complaint contains three counts. The first involves violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. Sections 1 and 2. Plaintiff contends that at a date at least as early as September 16, 1986, and continuing to the present time, the defendants, Two Rivers and other unnamed co-conspirators engaged in an unlawful combination or conspiracy in unreasonable restraint of interstate commerce in violation of Section 1. This alleged combination or conspiracy consists of a continuing agreement, understanding, and concert of action among the defendants and co-conspirators to exclude plaintiff from membership in Associates and thereby unlawfully restricting plaintiff's access to the market for radiological services controlled by defendants. Plaintiff claims that in formulating and effecting the conspiracy, the defendants and co-conspirators did those things which they conspired to do, including, *inter alia:*

a. Held meetings at various times at which meetings defendants and co-conspirators agreed to refuse plaintiff's application for membership in Associates in violation of the Membership Procedure as provided by the By–Laws of Associates and to give plaintiff false and misleading reasons for such refusal;

---

**1.** The Clayton Act, 15 U.S.C. section 15 states in pertinent part:

... any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. section 15 (United States Code, Lawyers Edition, 1985)

The Clayton Act, 15 U.S.C. section 26 states in pertinent part:

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws ...

15 U.S.C. section 26 (United States Code, Lawyers Edition, 1985)

**2.** The Sherman Act, 15 U.S.C. section 1 states in pertinent part:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, ... is hereby declared to be illegal.

15 U.S.C. section 1 (United States Code Service, Lawyers Edition, 1985)

The Sherman Act, 15 U.S.C. section 2 states in pertinent part:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, ... shall be deemed guilty of a felony ...

15 U.S.C. section 2 (United States Code Service, Lawyers Edition, 1985).

b. Rejected the plaintiff's application for membership in Associates in accordance with the agreement reached;

c. Telephoned and otherwise contacted one another between meetings concerning such agreement.

Complaint, par 11.

In addition, plaintiff contends that defendants have engaged in unlawful conduct with the intent to monopolize and to attempt to monopolize trade and commerce in violation of Section 2. Plaintiff contends that in pursuing their attempt to monopolize the relevant market, defendants, for the purpose of injuring, destroying and eliminating plaintiff as a viable business and competitor in the market and with the economic power to exclude plaintiff and with full knowledge that such acts and conduct, if successful, would have an adverse impact on plaintiff and destroy or injure it as a viable competitor, undertook the following acts:

a. MVP has wrongfully induced Associates to exclude plaintiff from membership in Associates;

b. MVP and Associates have wrongfully rejected plaintiff's application for membership in Associates.

Complaint, par. 12.

The other two counts of the complaint are pendent state claims alleging the same activities as violations of Section 340 of the New York State General Business Law and the New York State common law against unfair competition.

## C. *Health Maintenance Organizations ("HMOs")*

In order to put this case in context, it is necessary to understand how an HMO functions. An HMO is one form of a managed care delivery system. It has been described as "any arrangement for health care delivery or financing that operates on a basis other than the traditional fee-for-service system [which is] designed to control health care [costs] by increasing price competition between providers and encouraging providers to reduce utilization." Walsh & Feller, *Provider Sponsored ADS: Reducing Antitrust Liability After Maricopa,* Specialty Law Digest—Health Care 5 (Apr.1985). The growth of HMOs has been dramatic. In 1970 there were approximately 30 HMOs in the country serving three million enrollees. Today, 643 HMOs serve more than 31 million people. InterStudy, *The InterStudy Edge* 1 (June 1988). MVP currently has approximately 78,000 enrollees.

Health maintenance organizations have been widely viewed as pro-competitive entities with the capacity to substantially reduce health care costs.[3] One of the essential features of an HMO is that it selects preferred physicians and excludes others thereby creating competition among the providers of health care services. Antitrust enforcement agencies consider exclusions of physicians from HMOs and other managed care delivery systems as procompetitive.[4]

In order for an entity to operate as an HMO, it must apply to the New York State Department of Health ("Department") for a certificate of authority. N.Y.Pub.Health Law section 4402.1 (Consol.1976). As part of the certification process, the Department approves the service area within which an HMO can provide its approved benefits

---

**3.** For example, in the statement of policy and purpose in enacting the New York State HMO law, the state legislators noted that:

Encouraging the expansion of health care services options available to the citizens of the state is a matter of vital state concern. Without such an expansion, increased health insurance and other benefits will continue to escalate the costs of medical care and overload the health care delivery system. The health maintenance organization concept, through which members of an enrolled population are each entitled to receive comprehensive health ser-

vices for an advance or periodic charge, represents a promising new alternative for the delivery of a full range of health care services at a reasonable cost. Defendants' memorandum, p. 5–6 note 8 quoting N.Y.Pub.Health Law section 4400 (Consol.1976).

**4.** Defendants' memorandum p. 6 quoting J. Paul McGrath, Assistant Attorney General, Antitrust Division, U.S. Department of Justice, Remarks Before the 33rd Annual Bar Association Antitrust Spring Meeting (Mar. 22, 1985).

package. N.Y.Comp.Codes R. & Regs. tit. 10, section 98.7. In addition, to expand its service area, an HMO must apply for and receive an amended certificate of authority. N.Y.Comp.Code R. & Regs. tit. 10, section 98.7(b). Pursuant to a certificate of authority issued by New York State, MVP has been certified to provide comprehensive health services in the counties of Schenectady, Saratoga, Montgomery, Fulton, Herkimer, Oneida, Madison, Dutchess, Clinton, Essex, Franklin, St. Lawrence, and Otsego. However, MVP has not been certified to provide its services in Albany County.

The Department also regulates the operation of Associates. In accordance with New York State law, an IPA is organized to contract with physicians and other providers of medical or medically-related services in order to contract with a single HMO to make such provider services available to that HMO and its enrollees. N.Y. Comp.Codes R. & Regs. tit. 10, section 98.-4(b)(6)(iv). That same law prohibits an IPA from establishing or providing a comprehensive health services plan, a health maintenance organization, or hospital or health related services. Thus, in effect, an IPA exists solely to service HMO enrollees.

Associates has contracted with MVP to provide physician services in a specified service area. In accordance with state statute, Associates and MVP have entered into an agreement whereby Associates has agreed, *inter alia*, to (1) arrange for the provision of physician and other health professional services at such times and in such locations as MVP may require to satisfy the needs of its members; (2) establish credentialling requirements for membership in Associates; (3) maintain contracts with a sufficient number of physicians to guarantee its ability to deliver health services; and (4) arrange for member accessibility to all health services in the service area. N.Y.Comp.Codes R. & Regs. tit. 10, section 98.2(aa). Pursuant to this agreement, Associates' service area includes the counties of Schenectady, Fulton, Montgomery and Saratoga.

To fulfill the requirements of its Agreement with MVP, Associates has adopted a Membership Procedure which incorporates the credentialling requirements stipulated in the Agreement. The Associates Membership Procedure requires that in order to be admitted to membership in Associates, a physician, among other requirements, must: (1) have admitting privileges at a participating hospital; and (2) have an office in the MVP service area. However, there are limited exceptions to both of these requirements. For example, an applicant without privileges at a participating hospital may nevertheless qualify if he/she submits to Associates a supplementary application along with a letter from a participating physician confirming an arrangement to provide inpatient care at a participating hospital. Similarly, if an applicant does not have an office in the certified service area, as a matter of policy, Associates will accept such physicians when the following three conditions exist: (1) there is a deficiency of providers located within the service area; (2) the out-of-service-area provider has privileges at a participating hospital; and (3) the provider agrees to refer patients to participating providers. In order to meet its obligations to assure adequate physician services in the service area, Associates has accepted physicians for membership whose offices are out of the service area when there is not an adequate number of physicians within the service area. On these occasions, however, this need has been filled by physicians who have privileges in participating hospitals and who agree to refer patients to participating providers.

## II. Statement of Facts

This action arises as a result of defendants' alleged exclusion of plaintiff from their health insurance plan. Plaintiff made written application for participation in defendants' health insurance plan by letters dated September 16, 1986 and February 24, 1987. The letter of February 24, 1987 was reviewed by Associates' Membership/Credentials Committee and referred to Associates' board of directors for consideration. Associates' board of directors denied plaintiff's application without giving plaintiff notice of its intention to do so and without

giving plaintiff an opportunity to submit additional information or to request a hearing as required by the Associates' Bylaws. Furthermore, Associates' board of directors did not inform plaintiff of its action or provide a written statement of its reasons until plaintiff asked it to do so. When Associates finally did reply to this request, the reason given for its refusal was plaintiff's location outside MVP's "designated service area." Plaintiff contends that this reason is inconsistent with MVP's description of its service area in its own promotional materials and with MVP's treatment of other physicians with offices in Latham, New York.

After plaintiff's attorney communicated with MVP, defendants' attorney responded with additional justifications for Associates' denial of plaintiff's application, i.e., that the Department would neither permit MVP to enroll Albany County residents nor require it to make arrangements with providers located in Albany County and that MVP already had made adequate provision for radiological services in its service area. Associates continued to resist plaintiff's efforts to obtain acceptance as a participating provider and sought a ruling from the Department. The Department responded in writing that it would offer no objection to any arrangement that Associates might choose to make with plaintiff as a participating provider although it would not require such a relationship.

Plaintiff contends that Associates' refusal to allow it to participate in its provider network effectively denies plaintiff the ability to compete for radiology referrals from Associates' participating physicians. In addition, plaintiff contends that its inability to compete for radiology referrals denies Associates' participating primary care physicians and specialists the ability to choose among radiologists on the basis of quality and service. Finally, by denying plaintiff the means to finance the maintenance and replacement of its sophisticated and costly diagnostic imaging equipment, plaintiff contends that its exclusion threatens to allow Two Rivers to establish a monopoly position in a regional market for radiological services.

### III. Discussion

#### A. Motion for judgment on the pleadings or, in the alternative, for summary judgment

Defendants have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) on the following grounds: (1) that the court lacks subject matter jurisdiction, Fed. R.Civ.P. 12(b)(1), and (2) that the complaint fails to state a claim against defendants upon which relief can be granted. Fed.R. Civ.P. 12(b)(6). In the alternative, defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that there are no genuine issues of material fact.

In making this motion, defendants contend that the only applications pertinent to this case are those of the individual physician members of plaintiff. Since Associates has taken no action on these applications, defendants contend that there is no controversy between the parties and therefore this case is not ripe for adjudication and must be dismissed for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). They also contend, in the alternative, that even if the application in question is that of plaintiff itself, there is no controversy since plaintiff never filed an application.

Although plaintiff has not completed a formal application form to request membership in Associates, correspondence between the parties served the same purpose. Plaintiff first sought participation in Associates in September 1986 and applied again by letter dated February 24, 1987. In a letter sent by Associates to plaintiff, the plaintiff was informed that application forms would not be necessary and that Associates would make its decision on the basis of the February 24, 1987 letter. In a letter dated July 21, 1987, MVP informed plaintiff that it could not offer membership at that time.

Defendants contend that since they later provided plaintiff's member physicians with membership application forms, and the forms have not yet been processed, plaintiff's claim is not yet ripe for review. It is

the opinion of the Court that the defendants have in substance, if not in fact, rejected plaintiff's application, and thus defendants' position is without merit as it relates to their motion pursuant to Fed.R. Civ.P. 12(b)(1).

■ The second arm of defendants' motion is based on Fed.R.Civ.P. 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In reviewing a motion under Rule 12(b)(6), the court is limited to an examination of the complaint, must accept all allegations of fact as true, and must resolve all doubts in favor of the plaintiff. *Portland Retail v. Kaiser Foundation,* 662 F.2d 641, 647 (9th Cir.1981), *cert. denied,* 469 U.S. 1229, 105 S.Ct. 1230, 84 L.Ed.2d 368 (1985). In addition, for the court to grant this motion it must appear to a certainty that plaintiff could prove no set of facts entitling it to relief. *Jacksonville Newspaper Printing Pressman & Assistants Union No. 57 v. Florida Publishing Co.,* 340 F.Supp. 993 (1972), *aff'd,* 468 F.2d 824 (1972), *cert. denied,* 411 U.S. 906, 93 S.Ct. 1531, 36 L.Ed.2d 196 (1973). In antitrust cases, in particular, it must appear on the face of the complaint that plaintiff could prove no set of facts to sustain recovery. *Ware v. Associated Milk Producers, Inc.,* 614 F.2d 413 (5th Cir.1980). The complaint need only allege sufficient facts to state the elements of injury from an act prohibited by the antitrust laws. *Newman v. Universal Pictures,* 813 F.2d 1519 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2831, 100 L.Ed.2d 931 (1988). On the other hand, for the court to sustain this motion, a defendant in an antitrust case must meet a more stringent standard because the proof is often in the hands of the conspirators, and the plaintiff may need an opportunity to discover the facts necessary to withstand the motion. *HRM, Inc. v. Tele–Communications, Inc.,* 653 F.Supp. 645 (D.Colo.1987); *Hughes Auto v. Mid–Atlantic Toyota Dist., Inc.,* 543 F.Supp. 1056 (D.Md.1982).

Plaintiff contends that under these guidelines its complaint alleges sufficient facts to withstand defendants' motion.

Even defendants concede that the complaint adequately alleges a conspiracy; however, they insist that the complaint is deficient for failure to allege any anti-competitive effect. In response to this charge, plaintiff states that its complaint does in fact allege the following anti-competitive effects:

(a) restraint of plaintiff's ability to provide radiological services for the enrollees of MVP;

(b) restraint of plaintiff's ability to compete for referrals from members of Associates;

(c) impairment of its ability to maintain arrangements for use and replacement of diagnostic imaging equipment;

(d) deprivation of the benefits of competition to the users of radiological services and facilities; and

(e) a direct, substantial and unreasonable burden upon interstate commerce.

Complaint, par. 14.

Furthermore, plaintiff claims that these allegations are "wholly adequate to state a section 1 claim". *Hospital Bldg. Co. v. Trustees of Rex Hosp.,* 691 F.2d 678 (4th Cir.1983), *cert. denied,* 464 U.S. 890, 104 S.Ct. 231, 78 L.Ed.2d 224 (1983), *reh'g denied,* 464 U.S. 1003, 104 S.Ct. 512, 78 L.Ed.2d 700 (1983). Also, it claims that restraints of trade "inherently involve injury to the public and competition." *Mishler v. St. Anthony's Hosp. Sys.,* 694 F.2d 1225, 1228 (10th Cir.1981), citing *Alameda Mall, Inc. v. Houston Lighting and Power Co.,* 615 F.2d 343, 351 (5th Cir.1980), *cert. denied,* 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980).

■ There are two elements essential to a claim under Section 1 of the Sherman Act: (1) a "contract, combination or conspiracy," and (2) an unreasonable restraint of trade. *See Jim Forno's Continental Motors, Inc. v. Subaru Distribs. Corp.,* 649 F.Supp. 746 (N.D.N.Y.1986).

Defendants concede in their motion papers that plaintiff has sufficiently alleged a "contract, combination, or conspiracy" under the meaning of Section 1, but maintain that plaintiff has failed to sufficiently allege an unreasonable restraint on trade.

On its face, Section 1 of the Sherman Act prohibits every "restraint of trade." The courts have construed this provision, however, as prohibiting only those combinations which *unreasonably* restrain competition. *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1283 (7th Cir.1983); *Jim Forno's*, 649 F.Supp. at 753.

Some types of conduct are considered *per se* unreasonable. Activities that have been identified as *per se* unreasonable restraints on trade are price fixing, group boycotts, market allocation, and certain types of tying agreements. *See Bunker Ramo*, 713 F.2d at 1284; *see also Jim Forno's*, 649 F.Supp. at 753. The hallmark of a *per se* offense is that the practice at issue appears on its face to be one that would almost always act to restrict competition within a market. *Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.*, 441 U.S. 1, 19–20, 99 S.Ct. 1551, 1562–63, 60 L.Ed.2d 1 (1979); *Jim Forno's*, 649 F.Supp. at 753.

Plaintiff has alleged that defendants' activities constitute an illegal group boycott and an illegal tying agreement. However, the defendants' type of exclusivity practices are vertical, nonprice restraints that are analyzed not under the *per se* rule, but under the "rule of reason" standard. *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 58–59, 97 S.Ct. 2549, 2561–2562, 53 L.Ed.2d 568 (1976); *Ralph C. Wilson Indus. v. Chronicle Broadcasting*, 794 F.2d 1359, 1363 (9th Cir.1986).

The rule of reason standard "focuses directly on the challenged restraint's impact on competitive conditions." *National Soc'y of Professional Engineers v. United States*, 435 U.S. 679, 688, 98 S.Ct. 1355, 1363, 55 L.Ed.2d 637 (1977). It is not enough for the plaintiff to show that it was harmed in its capacity as a competitor. As the Supreme Court stated in *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977), "[p]laintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful" (emphasis in original). The antitrust laws were enacted for "the protection of *competition, not competitors.*" *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962) (emphasis in original). In other words, "it is injury to the market, not to individual firms, that is significant." *Klamath–Lake Pharm. v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292 (9th Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983). This court has previously held that to adequately allege a restraint of trade under the rule of reason, a plaintiff "must at least suggest the size of the relevant product and geographic markets, the amount of competition foreclosed, and how the acts of the defendants affected that competition." *Jim Forno's*, 649 F.Supp. at 754. *See also Bustop Shelters, Inc. v. Convenience and Safety Corp.*, 521 F.Supp. 989, 997 (S.D.N.Y.1981).

In analyzing plaintiff's allegations under the foregoing principles of antitrust law, it is clear that the bulk of plaintiff's claim—that *plaintiff* is or will be harmed by defendants' agreement with Two Rivers—is not "antitrust injury." Plaintiff is not entitled to relief for losing out to another competitor, namely Two Rivers, in the agreement to provide MRI services for defendants.

However, plaintiff has identified the geographic and product markets in its complaint as the sale and use of diagnostic imaging equipment in the United States, or more specifically in its statement pursuant to Rule 10(j) of the Local Rules of the Northern District of New York, as the market for referrals to private diagnostic radiology centers offering a complete range of diagnostic imaging technology in an area within a radius of at least 100 miles from Albany, New York.

In addition, plaintiff has alleged in its complaint that defendants' activities deprive the benefits of competition to users of radiological services and facilities. Plaintiff adds in its Rule 10(j) statement its related contention that the arrangements

between MVP and Associates do not permit Associates' participating physicians to refer their MVP-enrolled patients to plaintiff's radiologists for radiology services.

The court determines that these latter allegations are at least sufficient to avoid defendants' motion to dismiss plaintiff's Section 1 claim under Fed.R.Civ.P. 12(b)(6).

■ Having determined that plaintiff has alleged some antitrust injury, we now consider its claim under Section 2 of the Sherman Act. The essential elements of attempted monopolization under Section 2 are (1) a "dangerous probability of success" in monopolizing a given product market and (2) a specific intent to "destroy competition or build a monopoly." *Nifty Foods Corp. v. Great Atlantic & Pac. Tea Co.*, 614 F.2d 832, 841 (2d Cir.1980), citing *Times–Picayune Publishing Co. v. United States*, 345 U.S. 594, 626, 73 S.Ct. 872, 889, 97 L.Ed. 1277 (1953). Plaintiff's allegations of defendants' attempt to monopolize the market for the sale and use of diagnostic imaging equipment in the United States or the market for referrals to private diagnostic radiology center in the Albany area are wholly insufficient to withstand defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6).

It is clear to this court that plaintiff and defendants are not competitors. Plaintiff is in the business of selling radiological services; defendants are not. Defendant MVP buys medical services from providers and sells them to subscribers, and competes against other IPAs which do the same thing. Defendant Associates is an organization of physicians who provide medical care to enrollees of MVP. Not only is there no *dangerous probability* that defendants will succeed in monopolizing the markets identified by plaintiff, there is no present *possibility* defendants will do so.

Because we hold that plaintiff has failed to establish a "dangerous probability of success" as a matter of law, it is unnecessary to consider the question of defendants' intent. However, notwithstanding plaintiff's lack of evidence of an intent to monopolize plaintiff's market, defendants would certainly benefit from greater, rather than less competition between radiological services providers. Thus, the suggestion that defendants intend to eliminate one of those providers is against logic.

The court next considers defendants' alternative motion to grant summary judgment as to plaintiff's Section 1 claim.

■ Generally, motions for summary judgment are disfavored in antitrust cases. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970) (the party seeking summary judgment must *conclusively* show the absence of genuine issues of material fact and the plaintiff is given the benefit of *all reasonable inferences*) (emphasis added); *Bender v. Southland Corp.*, 749 F.2d 1205 (6th Cir.1984). The classic expression of the courts' extreme reluctance to grant summary judgment motions in antitrust cases is found in *Poller v. CBS*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1961) where the Supreme Court stated:

> Summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.

*Id.* at 472–73, 82 S.Ct. at 490–91.

Furthermore, a defendant seeking summary judgment has the initial burden to offer an adequate explanation of a legitimate alternative basis for its conduct. *Smith v. Northern Michigan Hosp.*, 703 F.2d 942, 948 (6th Cir.1983) citing *First National Bank v. Cities Service*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), *reh'g. denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). Plaintiff contends that defendants have failed to sustain this burden. Moreover, plaintiff argues that the antitrust plaintiff, in opposing a motion for summary judgment, must merely offer significant probative evidence supported by reasonable inferences. *Trident Neuro–Imaging Lab. v. Blue Cross*, 568 F.Supp. 1474, 1478 (D.S.C.1983).

Defendants have provided a legitimate alternative basis for their conduct, i.e., de-

fendants require a limited amount of radiological services, and Two Rivers was the successful bidder for those services over plaintiff.

As previously noted, defendants have conceded that plaintiff has offered sufficient proof of a "contract, combination or conspiracy" under Section 1. And while we have held that plaintiff has *alleged* a restraint on trade sufficient to defeat the motion to dismiss, plaintiff has failed, at this stage, to come forth with any proof of the impact of defendants' actions on competitive conditions sufficient to defeat a motion for summary judgment.

B. *Cross-motion to continue action pending discovery*

Plaintiff has requested by cross-motion, that in the event the court is inclined to grant summary judgment, the court issue an order pursuant to Fed.R.Civ.P. 56(f) continuing the hearing on defendants' motion until plaintiff shall have had an opportunity to conduct discovery in accordance with the stipulated case management order dated February 24, 1989.

■ Under the Federal Rules, the notice pleading requirements of Fed.R.Civ.P. 8 are "inextricably intertwined" with the functioning of all pre-trial procedures, including those for discovery and free amendment of pleadings. 5 Wright & Miller, *Federal Practice and Procedure*, section 1202. In *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1946), the Supreme Court stated that the purpose of pleading is general notice-giving while the purpose of discovery is to "narrow and clarify the basic issues between the parties," and to ascertain "the facts, or information as to the existence or whereabouts of the facts, relative to those issues." In addition, implicit in the text of Rule 56 is a requirement of sufficient time for discovery. *Portland Retail v. Kaiser Foundation*, 662 F.2d 641 (9th Cir.1981), *cert. denied*, 469 U.S. 1229, 105 S.Ct. 1230, 84 L.Ed.2d 368 (1985); *see also McDaniel v. General Motors Corp.*, 480 F.Supp. 666, *aff'd*, 628 F.2d 1345 (1979); *Argus v. Eastman Kodak*, 552 F.Supp. 589 (S.D.N.Y. 1982), *aff'd* 801 F.2d 38 (2d Cir.1986) (an affidavit showing that the opposing party is unable to state facts because no discovery has yet been had is sufficient to defeat a motion for summary judgment).

Plaintiff has demonstrated by sworn affidavit a reasonable basis for the essential allegations of its Section 1 conspiracy claim in its complaint and has a "reasonably founded hope that the process will reveal relevant evidence." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975).

■ Further, even a plaintiff who has had an opportunity for general discovery may, when met with a motion for summary judgment, show a need for additional discovery under Fed.R.Civ.P. 56(f). In an antitrust case, where plaintiff shows by affidavit the areas in which discovery is necessary, summary judgment is premature and an order granting a motion for summary judgment is an abuse of discretion. *Glen Eden Hosp. v. Blue Cross & Blue Shield*, 740 F.2d 423 (6th Cir.1984). Plaintiff contends that the affidavit of Michael E. Berlow shows that discovery is necessary to obtain information with respect to the characteristics of the market for referrals for radiological services, Associates' penetration of that market through its provider network, and the arrangements among MVP, Associates, Two Rivers and other co-conspirators.

Although defendants maintain that summary judgment can be granted without discovery, they ask that if this court determines that discovery under Fed.R.Civ.P. 56(f) is appropriate, the scope of such discovery be limited to only those controverted facts which could create genuine issues of material fact (these are identified in the Affidavit of Mark E. Watkins in Support of Cross–Motion Pursuant to Rule 56 ("Watkins Affidavit")). Moreover, they ask the court to place a reasonable limit on the amount of time plaintiff has to conduct the requested limited discovery.

■ Rule 56(f) establishes a procedure to enable a party additional time to obtain limited discovery in order to file an opposi-

tion to a summary judgment. *Contemporary Mission Inc. v. U.S. Postal Service,* 648 F.2d 97 (2d Cir.1981). Also, Rule 56(f) discovery is specifically designed to enable a plaintiff to fill material evidentiary gaps in its case in an effort to withstand summary judgment. *Michael Rose Productions, Inc. v. Loew's Inc.,* 141 F.Supp. 257, 263 (S.D.N.Y.1956). However it does not permit a plaintiff to engage in a "fishing expedition." *Waldron v. Cities Service Co.,* 361 F.2d 671, 673 (2d Cir.1966), *aff'd sub nom. First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 *reh'g denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). Thus, in considering a Rule 56(f) motion, the court, in the exercise of its discretion, must determine whether or not to grant a continuance to enable the plaintiff to obtain certain requested additional discovery. In effect, the court must determine "whether to postpone the presentation of the motion [for summary judgment] because [plaintiff] claims that discovery will enable him to resist it." *Skouras Theatres Corp. v. Radio–Keith–Orpheum Corp.,* 10 Fed.R. Serv.2d 826, 828 (S.D.N.Y.1966). In addition, if the court decides to grant such a continuance, it must also determine the appropriate scope and manner of such discovery. *Sam Wong & Son, Inc. v. N.Y. Mercantile Exchange,* 735 F.2d 653, 678 (2d Cir.1984).

▆▆▆ To fulfill the requirements of Rule 56(f), the plaintiff must through affidavit (1) identify the specific controverted facts which are the basis of the discovery request; and (2) show that such controverted facts could create a genuine issue of material fact sufficient to defeat the defendants' summary judgment. *Paul Kadair Inc. v. Sony Corp. of America,* 694 F.2d 1017, 1028 (5th Cir.1983). In addition, "[a]s [the plaintiff] is the party moving for discovery under Rule 56(f) he, like any other moving party, has the burden of supporting his motion." *Skouras,* 10 Fed.R. Serv.2d at 828. In compliance with these requirements, the plaintiff has identified its

"controverted facts" in the Watkins Affidavit. According to this statement, the factual issues for which discovery is necessary are:

1. the extent to which Associates' network of participating physicians has penetrated the market;

2. the market share of Two Rivers Radiology P.C.; and

3. the nature and purpose of the arrangements and connections linking defendants with Two Rivers and possibly other co-conspirators.

Watkins Affidavit, at par. 5.

We find that the issues proposed are relevant to the question of the impact of defendants' actions on competitive conditions, and that they could create genuine issues of material fact if supported by sufficient probative evidence. Thus, this court grants plaintiff's motion for continuance of this action pending discovery related to its section 1 conspiracy claim, limited to the issues identified here. The court will reserve its decision on plaintiff's state claims pending its final determination on summary judgment.

## C. *Sanctions*

Given the fact that this court has denied defendants' summary judgment motion as to plaintiff's section 1 conspiracy claim pending discovery, it is inappropriate to grant the defendants' motion for sanctions against the plaintiff and its counsel. Rule 11 sanctions are to be imposed against an attorney and/or his client "when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 252 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).[5]

---

**5.** Rule 11 provides, in pertinent part, that:

"The signature of an attorney or party con-

stitutes a certificate by him that he had read

As underscored by the U.S. Court of Appeals for the Second Circuit in *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir. 1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987), and by the Notes of the Advisory Committee on Rules referable to the 1983 amendments to Rule 11, the application of Rule 11 is limited to testing the conduct of the signer of a pleading, motion, or other paper as of the time it was signed. Rule 11 <u>does not</u> impose a continuing duty to correct or withdraw an earlier pleading, motion or other paper. *Oliveri*, 803 F.2d at 1274; *see also, Motown Productions, Inc. v. Cacomm, Inc.*, 849 F.2d 781, 784–85 (2d Cir., 1988). Furthermore, the Second Circuit has stated that Rule 11 is violated <u>only</u> when it is " 'patently clear that a claim has absolutely no chance of success.' " *Oliveri*, 803 F.2d at 1275, quoting *Eastway Construction Corp. v. City of New York*, 762 F.2d at 254 (2d Cir.1985).

In addition, where the action involves antitrust claims, caution in the imposition of Rule 11 sanctions is especially appropriate given the importance of discovery in antitrust cases where evidence is largely within the knowledge and control of adverse parties. Acknowledging this principle, the court in *Mohammed v. Union Carbide Corporation*, 606 F.Supp. 252 (E.D.Mich.1985) concluded that no award of Rule 11 sanctions was warranted in connection with the plaintiff's claims that the defendants had violated Sections 1 and 2 of the Sherman Act. "The difficulty of investigating the conspiracy and monopolization claims prior to the initiation of the lawsuit lessens the extent of investigative efforts that an attorney must undertake to satisfy the 'reasonable inquiry' standard." *Mohammed*, 606 F.Supp. at 262. In this case, the plaintiff's claims that defendants violated Section 1 of the Sherman Act are as complete as they can be without the aid of

the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to

discovery. Reference to plaintiff's affidavit outlining the actions of its attorney to make a reasonable inquiry that his client's claims are well grounded in fact and law are adequate, at least at this stage of the proceedings. Given the findings of the *Mohammed* court, relative to antitrust actions, it appears that plaintiff's attorney has made a sufficient inquiry to satisfy the 'reasonable inquiry' standard. Thus, this court denies defendants' motion for Rule 11 sanctions.

Accordingly:

(1) Defendants' motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) is denied as to plaintiff's Section 1 Sherman Act claim and granted as to plaintiff's Section 2 Sherman Act claim; and

(2) Defendants' motion for summary judgment as to plaintiff's Section 1 Sherman Act claim is denied, without prejudice to renew pending completion of discovery as set forth herein.

IT IS SO ORDERED.

cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction...."
Fed.R.Civ.P. 11.