**CAPITAL IMAGING ASSOCIATES, P.C., Plaintiff,**

v.

**MOHAWK VALLEY MEDICAL ASSOCIATES, INC., and Mohawk Valley Physicians' Health Plan, Inc., Defendants.**

No. 88–CV–1291.

United States District Court,
N.D. New York.

May 8, 1992.

958

Cooper Erving Savage Nolan & Heller (Mark E. Watkins, of counsel), Albany, N.Y., for plaintiff.

Epstein Becker & Green (Linda V. Tiano, of counsel), New York City, Clifford E. Barnes, Washington, D.C., for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### I. INTRODUCTION

Plaintiff invokes this court's jurisdiction pursuant to the provisions of sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and

26, to recover treble damages for and obtain injunctive relief from defendants' alleged violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and the costs of this suit including reasonable attorney's fees. In response to plaintiff's allegations, defendants moved in 1989 to dismiss plaintiff's complaint or, in the alternative, for summary judgment. In a Memorandum–Decision and Order ("order") dated November 28, 1989, defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) was granted as to plaintiff's section 2 Sherman Act claim but denied as to plaintiff's section 1 Sherman Act claim. *Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs., Inc.*, 725 F.Supp. 669, 681 (N.D.N.Y.1989). Although the court denied defendants' motion for summary judgment as to plaintiff's section 1 claim, it did so without prejudice and with leave to renew pending completion of discovery limited to those factual issues set forth in the order. *Id.* Now that discovery has been completed, defendants renew their motion for summary judgment. Plaintiff opposes this motion and in addition cross-moves to amend its complaint to more specifically identify the relevant market. It is these motions which are presently before the court.

## II. BACKGROUND [1]

### A. The Parties

At the time plaintiff ("Capital") commenced this action, it was one of only two private radiology practices offering a full range of diagnostic imaging services in the area around Albany, New York, including parts of southern Vermont and western Massachusetts. Capital's only competitor was Two Rivers Radiology ("Two Rivers"), a private radiology practice with offices located across the street from Capital in Latham, a community in northern Albany County, New York. Although Two Rivers is not a party to this action, plaintiff contends that the contract between Two Rivers and defendants to provide a specialized

radiological procedure known as Magnetic Resonance Imaging ("MRI") is evidence that defendants acted together for the anticompetitive purpose of harming the market for radiology referrals. *See* Plaintiff's Memorandum of Law at 4.

Defendant, Mohawk Valley Medical Associates ("Associates"), is an independent practice association ("IPA") of member physicians organized to provide medical care to enrollees of defendant, Mohawk Valley Physicians Health Plan, Inc. ("MVP"). Together the defendants constitute an example of an IPA-model health maintenance organization ("HMO"). Under this type of arrangement, the HMO (MVP) contracts with an organization of physicians (Associates) to provide physician services to the HMO's members in the individual physicians' offices.

In order for an entity, such as MVP, to operate as an HMO, it must apply to the New York State Department of Health ("Department") for a certificate of authority. N.Y.Pub. Health Law § 4402(1) (McKinney 1985). As part of the certification process, the Department approves the service area within which the HMO can provide its approved benefits package. N.Y.Comp.Codes R. & Regs. tit. 10 § 98.7. If subsequently an HMO wants to expand its service area, it must apply for and receive an amended certificate of authority. N.Y.Comp.Code R. & Regs. tit. 10, § 98.-7(b). At the time this suit was commenced, MVP was certified to provide comprehensive health services in the counties of Schenectady, Saratoga, Montgomery, Fulton, Herkimer, Oneida, Madison, Dutchess, Clinton, Essex, Franklin, St. Lawrence, and Otsego. More recently, MVP has received an amended certificate of authority which extends its service area to include the counties of Delaware, Ulster, Warren and Rensselaer. *See* Defendants' Memorandum of Law at 6 n. 1. MVP has never been certified to provide its services in Albany County.

---

**1.** The court assumes familiarity with the facts set forth in its previous order dated November 28, 1989, *Capital Imaging,* 725 F.Supp. 669, and summarizes only those necessary to the consideration of the motions now before the court.

The Department also regulates the operation of Associates. In accordance with New York State law, an IPA is organized to contract with physicians and other providers of medical or medically-related services in order to contract with a single HMO to make such provider services available to that HMO and its enrollees. N.Y.Comp.Codes R. & Regs. tit. 10, § 98.-4(b)(6)(iv). In this case, Associates has contracted with MVP to provide physician services in a specified service area which includes the counties of Schenectady, Fulton, Montgomery and Saratoga. Pursuant to state law, Associates and MVP have entered into an agreement whereby Associates has agreed, *inter alia,* to (1) arrange for the provision of physician and other health professional services at such times and in such locations as MVP may require to satisfy the needs of its members; (2) establish credentialling requirements for membership in Associates; (3) maintain contracts with a sufficient number of physicians to guarantee its ability to deliver health services; and (4) arrange for member accessibility to all health services in the service area. N.Y.Comp.Codes R. & Regs. tit. 10, § 98.2(aa).

### B. The Complaint

In its complaint, Capital alleges that from a date at least as early as September 16, 1986, and continuing to the present, the defendants, Two Rivers, and other unnamed co-conspirators have engaged in an unlawful combination or conspiracy in unreasonable restraint of interstate commerce in violation of section 1 of the Sherman Act ("section 1"). According to Capital, this alleged conspiracy consists of a continuing agreement, understanding, and concert of action among the defendants and co-conspirators to exclude Capital from membership in Associates, thereby unlawfully restricting Capital's access to the market for radiological services controlled by defendants.

This action arises as a result of defendants' exclusion of Capital from their

health insurance plan. Capital applied for, but was denied, membership in the Associates. The reason given for this denial was that Capital's only office was in Albany County, outside MVP's designated service area. Capital contends that this reason is inconsistent with MVP's description of its service area in its promotional materials and with MVP's treatment of other physicians with offices in Latham, New York. In addition, Capital contends that Associates' refusal to allow it to participate in defendants' provider network, among other things, effectively denies Capital the ability to compete for radiology referrals from Associates' participating physicians. Finally, Capital contends that this inability to compete for radiology referrals denies Associates' participating primary care physicians and specialists the ability to choose among radiologists on the basis of quality and service.

### C. Prior Proceedings

In its previous order, this court denied defendants' motion to dismiss Capital's section 1 claim because "[p]laintiff has *alleged* a restraint on trade sufficient to defeat the motion to dismiss." *Capital Imaging,* 725 F.Supp. at 679 (emphasis in original).[2] Nonetheless, the court went on to say that "[p]laintiff has failed, at this stage, to come forth with any proof of the impact of defendants' actions on competitive conditions sufficient to defeat a motion for summary judgment." *Id.* Rather than grant defendants' motion for summary judgment with respect to plaintiff's section 1 claim at that time, however, the court granted Capital's cross-motion to continue this action pending discovery pursuant to Fed.R.Civ.P. 56(f).

In order to be granted relief pursuant to Fed.R.Civ.P. 56(f), plaintiff must by affidavit (1) identify the specific controverted facts which are the basis of the discovery request; and (2) show that such controverted facts could create a genuine

---

**2.** In this same order, the court granted defendants' motion to dismiss Capital's section 2 Sherman Act claim pursuant to Fed.R.Civ.P. 12(b)(6). In addition, the court reserved decision on Capital's state claims pending its final determination on summary judgment.

issue of material fact sufficient to defeat the defendants' motion for summary judgment. *Capital Imaging*, 725 F.Supp. at 680 (citing *Paul Kadair Inc. v. Sony Corp. of America*, 694 F.2d 1017, 1028 (5th Cir. 1983)). In compliance with Rule 56(f), Capital identified its "controverted facts" in the Watkins Affidavit. According to this affidavit, the factual issues which required discovery were:

1. the extent to which Associates' network of participating physicians has penetrated the market;

2. the market share of Two Rivers Radiology P.C.; and

3. the nature and purpose of the arrangements and connections linking defendants with Two Rivers and possibly other co-conspirators.

*Capital Imaging*, 725 F.Supp. at 680 (quoting Watkins Affidavit at ¶ 5).

Based on this affidavit, the court found that the "issues proposed are relevant to the question of the impact of defendants' actions on competitive conditions, and that they could create genuine issues of material fact if supported by sufficient probative evidence." *Id.* Therefore, the court granted plaintiff's cross-motion for "continuance of this action pending discovery related to its section 1 conspiracy claim, *limited to the issues identified here.*" *Id.* (emphasis added). Now that discovery has been completed, defendants renew their motion for summary judgment pursuant to Fed. R.Civ.P. 56.

## III. DISCUSSION

### A. Summary Judgment Standard

■ Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 210–12 (1986). The mere existence of some alleged factual dispute, however, will not defeat such a motion. *Id.* To the contrary, Federal Rule of Civil Procedure 56 requires that there be no *genuine* issue of *material* fact. *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211 (emphasis in the

original). Material facts are defined as those which might affect the outcome of the suit under the governing law. *Id.* In addition, Federal Rule of Civil Procedure 56 limits the information that the court may consider in determining whether or not to grant summary judgment to the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file. *See* Fed.R.Civ.P. 56. In this regard, the movant's uncontested assertions in its 10(j) Statement are deemed admitted for purposes of deciding whether summary judgment is appropriate. *See* Local Rule 10(j); *see also Blackwelder v. Safnauer*, 866 F.2d 548 (2d Cir.1989).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265, 273 (1986). The moving party may discharge this burden by demonstrating to the court that there is no evidence to support the non-movant's case on which that party bears the burden of proof at trial. *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F.Supp. 814, 819 (S.D.N.Y.1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

■ Once the moving party has met its burden, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of material fact. In this regard, the non-movant must do more "that simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could

return a verdict in its favor." *Greenblatt*, at 819–820 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement)). Moreover, as a preliminary matter, the non-movant must "make a showing sufficient to establish the existence of [the] element[s] essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. If the non-movant fails to satisfy this initial burden, there can be no genuine issue as to any material fact because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* Under these circumstances, the moving party is entitled to a judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

More specifically, in the context of a Sherman Act claim, the Supreme Court has held that to survive a motion for summary judgment, the non-movant must establish that there is "a genuine issue of material fact as to whether [defendants/movants] entered into an illegal conspiracy that caused [plaintiff/non-movant] to suffer a cognizable injury." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538, 551–52 (1986). The Court went on to say that, in this regard, plaintiff must show more than a conspiracy in violation of the antitrust laws. It must show injury to it resulting from the defendants' illegal conduct. *Id.* In addition, the Court in *Matsushita* held that in a section 1 case antitrust law limits the range of permissible inferences which can be made from ambiguous evidence. *Matsushita*, 475 U.S. at 588, 106 S.Ct. at 1356, 89 L.Ed.2d at 553. With respect to this point, the Court cited its decision in *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), in which it held that "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an antitrust conspiracy." *Matsushita*, 475 U.S. at 588, 106 S.Ct. at 1356, 89 L.Ed.2d at 553 (quoting *Monsanto*, 465 U.S. at 764, 104 S.Ct. at 1470, 79 L.Ed.2d at 785). Finally, the Court held that to survive a motion for summary judgment, the non-movant must present evidence "that tends to exclude the possibility" that the alleged conspirators acted independently. *Id.* (quoting *Monsanto*, 465 U.S. at 764, 104 S.Ct. at 1471, 79 L.Ed.2d at 785).

## B. Sherman Act Section 1 Claim

■ There are two elements which are essential to a section 1 claim. First, plaintiff must demonstrate that there is a "contract, combination or conspiracy." Secondly, plaintiff must demonstrate that defendants' actions constitute an unreasonable restraint of trade. *Capital Imaging*, 725 F.Supp. at 676 (citing *Jim Forno's Continental Motors, Inc. v. Subaru Distribs. Corp.*, 649 F.Supp. 746 (N.D.N.Y.1986)). It is with these elements in mind that the court must determine whether or not Capital's discovery has unearthed evidence sufficient to withstand defendants' motion for summary judgment.

### 1. "Contract, Combination or Conspiracy"

In their original motion papers, defendants conceded that Capital had sufficiently alleged a "contract, combination or conspiracy under the meaning of Section 1," to withstand a motion to dismiss. *See Capital Imaging*, 725 F.Supp. at 676. They now contend, however, that Capital has failed to come forth with evidence that a conspiracy exists sufficient to withstand a motion for summary judgment. *See* Defendants' Memorandum of Law at 21. To the contrary, Capital contends that it "has demonstrated sufficient direct factual and circumstantial evidence that MVP and [Associates] conspired to deny Capital membership in [Associates] for an anticompetitive purpose, namely to preserve for [Associates] radiologists sole access to referrals from primary physicians and other specialists doing business in Fulton, Montgomery, Saratoga, Rensselaer, and Schenectady Counties." *See* Plaintiff's Memorandum of Law at 1.

Every contract between a buyer and a seller of services has the effect of which plaintiff complains. It is axiomatic that when a buyer contracts with one seller, a second seller no longer has access to the buyer's business to the extent that it is covered by the existing contract. *See Barry v. Blue Cross of California*, 805 F.2d 866, 871 (9th Cir.1986). Nevertheless, such a consequence is not unlawful. *Id.* As was the case with the plaintiff in *Barry*, Capital seems to have confused an agreement to boycott which is illegal with an agreement to buy and sell services which is legal. *See id.* Moreover, given the industry within which both plaintiff and defendants operate, Capital's contention that a conspiracy exists for purposes of section 1 liability simply because defendants have contracted with some radiologists and not with others, including Capital, is not legally supportable.[3] One of the essential features of an HMO is that it selects preferred physicians and excludes others. In fact, as this court previously stated, this practice creates, rather than stifles, competition among the providers of health care services. *Capital Imaging*, 725 F.Supp. at 673.[4] Thus, if this court were to accept Capital's statement as proof of a conspiracy, all HMOs would be illegal as per se violations of the antitrust laws. This simply is not the law.

In response to Capital's allegations of conspiracy, defendants offer two permissible business reasons for denying Capital's request for membership in the Associates, both of which arise from the Associates' Membership Procedures. *See Capital Imaging*, 725 F.Supp. at 674. First of all, defendants argue that Capital's office is outside defendants' service area and therefore does not meet the requirement that members have an office in the MVP service area. *Id.* Secondly, defendants contend that there is no deficiency of radiology services within their service area that would require them to seek outside providers. Although plaintiff claims that defendants' first reason for its exclusion is a sham, it is undisputed that, in fact, this is a membership requirement and Capital's office is in Albany County, outside of defendants' service area. Likewise, defendants' second contention is supported by statistics which plaintiff itself has provided. For example, plaintiff states that 15 of 17 radiologists in Schenectady County and 15 of 20 radiologists in Rensselaer County are members of the Associates. *See* Plaintiff's Memorandum of Law at 18 (citing Berlow Affidavit at ¶¶ 8, 9 and Fitzgerald Affidavit at ¶ 17). These figures, at least with respect to these two counties within MVP's service area, strongly support defendants' contention that there is no deficiency of radiology services in MVP's service area and thus no need to extend membership in the Associates to a group of radiologists located outside this service area.

The only concrete example to which plaintiff points as evidence of a conspiracy to exclude Capital from membership in the Associates involves "the circumstances under which Two Rivers Radiology P.C. ("Two Rivers") was awarded an exclusive contract to provide Magnetic Resonance Imaging ("MRI") services to enrollees of MVP ..."[5] *See* Plaintiff's Memorandum of Law at 1. Plaintiff alleges that the

---

**3.** Interestingly enough, Capital has not presented this court with any evidence that any radiologist who meets the Associates' membership requirements has been denied membership or that, in the alternative, any radiologist who, like Capital, does not meet these requirements has been admitted. Even Two Rivers which plaintiff contends is a co-conspirator with defendants has not been admitted to membership in the Associates.

**4.** Antitrust enforcement agencies also consider exclusions of physicians from HMOs to be pro-competitive. *See Capital Imaging*, 725 F.Supp. at 673 n. 4.

**5.** Although initially it appeared that at least one basis for plaintiff's section 1 claim was the defendants' exclusive contract with Two Rivers for MRI services, Capital now states that it does not allege that the MRI arrangement between defendants and Two Rivers was an antitrust violation or that it sustained antitrust damages because of it. Rather, plaintiff contends that this arrangement is simply evidence of the purposeful anti-competitive scheme to exclude Capital from membership in the Associates. *See* Plaintiff's Memorandum of Law at 6.

bidding process for this contract was rigged and that defendants had decided prior to soliciting the bids that it would contract with Two Rivers. As evidence of this statement, plaintiff points to the September 21, 1987, minutes of the Board meeting which state that "Mohawk Valley Physicians' Health Plan will contract with Upstate Imaging [Two Rivers] for MRI scans ..." *See* Exhibit F to Plaintiff's 10(j) Statement. Defendants counter this argument by submitting the minutes of the Board meeting of October 19, 1987, which corrected this statement to read "MVP Health Plan will request bids from Upstate Imaging and Capital Imaging for MRI scans." *See* Exhibit 14 to Defendants' 10(j) Statement.

Although for purposes of this motion it is not this court's function to rule on the weight of the evidence or the issue of credibility, *Anderson v. Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2511, 91 L.Ed.2d at 212, it is its function to determine which facts are material. In this regard, the court fails to see how the bidding process for the MRI contract, even if rigged, is any indication that defendants conspired to exclude Capital from membership in the Associates. This is especially true in light of the fact that Capital concedes that the MRI contract itself is not an antitrust violation. Moreover, Two Rivers is not a member of the Associates nor does Two Rivers provide any other radiology services to defendants' enrollees.[6] Accordingly, looking at the totality of the situation, the court concludes that Capital has failed to present this court with any evidence to support a finding that defendants' exclusion of Capital from membership in the Associates in any way constituted a conspiracy in violation of section 1.

2. Restraint of Trade

■ Even if the court had concluded that defendants illegally conspired to exclude Capital from membership, Capital still must demonstrate that the purpose or effect of this alleged conspiracy constitutes

an unreasonable restraint of trade which has injured plaintiff within the meaning of section 1. *See Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 133 (2d Cir.1978), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981). Although on its face section 1 prohibits every restraint of trade, courts have interpreted this provision to prohibit only those combinations that unreasonably restrain competition. *Capital Imaging*, 725 F.Supp. at 677 (citing *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1283 (7th Cir.1983); *Jim Forno's Continental Motors, Inc. v. Subaru Distribs. Corp.*, 649 F.Supp. 746, 753 (N.D.N.Y.1986)). Although some types of conduct are considered per se unreasonable, this court previously held that "defendants' type of exclusivity practices are vertical, nonprice restraints that [must be] analyzed not under the *per se* rule, but under the 'rule of reason' standard." *Id.* (citing *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 58–59, 97 S.Ct. 2549, 2561–62, 53 L.Ed.2d 568, 585–86 (1977); *Ralph C. Wilson Indus. v. Chronicle Broadcasting*, 794 F.2d 1359, 1363 (9th Cir. 1986)). The court adheres to this conclusion despite plaintiff's arguments to the contrary. *See Barry v. Blue Cross of California*, 805 F.2d 866 (9th Cir.1986); *NCAA v. Board of Regents of University of Oklahoma*, 468 U.S. 85, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984) (holding that under certain circumstances the court should analyze even a horizontal restraint using the rule of reason test).

■ Under this rule of reason standard, plaintiff must demonstrate more than that it was harmed in its capacity as a competitor. *See id.* What is significant is "injury to the market, not to individual firms ..." *Id.* at 677 (quoting *Klamath–Lake Pharm. v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292 (9th Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983)). In this regard, the rule of reason inquiry focuses directly on the challenged restraint's impact on competitive conditions. *National Society of Pro-*

---

**6.** It is also interesting to note that Two Rivers' bid for MRI services was $510 while Capital's bid was $550.

*fessional Engineers v. U.S.,* 435 U.S. 679, 688, 98 S.Ct. 1355, 1363, 55 L.Ed.2d 637, 648 (1978). Accordingly, as this court has previously held, to adequately allege a restraint of trade under the rule of reason, plaintiff "must *at least* suggest the size of the relevant product and geographic markets, the amount of competition foreclosed, and how the acts of the defendants affected that competition." *Id.* (emphasis added) (quoting *Jim Forno's Continental Motors, Inc. v. Subaru Distribs. Corp.,* 649 F.Supp. 746, 754 (N.D.N.Y.1986)). The court will discuss each of these elements on which plaintiff bears the burden of proof *seriatim.*

### a. The Relevant Antitrust Market

In its original complaint, Capital identified its geographic and product markets as the sale and use of diagnostic imaging equipment in the United States. *See* Plaintiff's Complaint at ¶ 7. In its original Rule 10(j) Statement, however, plaintiff refined its definition of the relevant market to be "the market for referrals to private diagnostic radiology centers offering a complete range of diagnostic imaging technology in an area within a radius of at least 100 miles from Albany, New York." *See Capital Imaging,* 725 F.Supp. at 677. Now that discovery has been completed, plaintiff cross-moves to amend paragraph 7 of its complaint to further narrow its definition of the relevant market as follows: "[t]he relevant market for purposes of this action is the market for radiology referrals within a radius of 100 miles from Albany, New York." *See* Plaintiff's Memorandum of Law at 20.

 There are two distinct, but related, components that comprise an antitrust market: (1) the relevant product market and (2) the relevant geographic market. *Drs. Steuer & Latham, P.A. v. National Medical Enters., Inc.,* 672 F.Supp. 1489, 1510 (D.S.C.1987). The relevant product market consists of those reasonably interchangeable services or products that compete with the products or services at issue. *Id.* The relevant geographic market consists of the geographic area in which there is effective competition in the sale and distribution of the particular services or products and in which persons or entities actually, or potentially may, compete. *Id.* In the present case, Capital defines the product market as "radiology referrals" and the geographic market as "the area within a 100 mile radius of Albany, New York." Defendants do not oppose Capital's definition of the relevant market. Absent any proof to the contrary, the court concludes that plaintiff's proposed definition of the relevant market is appropriate, at least for purposes of these motions. Accordingly, the court concludes that Capital has met its burden to suggest the size of the relevant antitrust market. The court, therefore, adopts this definition as a basis for determining whether defendants' actions constitute a restraint of trade.

### b. Effect on Competition

 Under the rule of reason, plaintiff must demonstrate that defendants' alleged improper behavior has either an anticompetitive purpose or an anticompetitive effect which restrains trade in the relevant market. *See Apex Oil Co. v. DiMauro,* 713 F.Supp. 587, 595 (S.D.N.Y.1989). This is often difficult because the antitrust laws are concerned only with acts that harm "competition, not competitors." *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat,* 429 U.S. 477, 488, 97 S.Ct. 690, 698, 50 L.Ed.2d 701, 712 (1977)). In other words, behavior that hurts or even destroys an individual competitor is not illegal under the Sherman Act unless it also adversely affects competition. *See id.* Thus, if plaintiff fails to prove anticompetitive purpose or effect, its complaint will fail as a matter of law to state a cause of action under the antitrust laws. *See id.* (citing *United States Football League v. National Football League,* 842 F.2d 1335, 1360 (2d Cir.1988)). If, however, plaintiff meets this initial burden, the burden then will shift to defendants either to justify their acts or to demonstrate a procompetitive result of their challenged behavior. *Apex Oil Co.,* 713 F.Supp. at 595 (citing *NCAA v. Board of Regents,* 468 U.S. 85, 113, 104 S.Ct. 2948, 2966, 82 L.Ed.2d 70, 91 (1984)).

■ In order to establish that defendants' actions have an impermissible effect on competition, Capital, as a preliminary matter, must demonstrate that defendants have significant market power in the relevant market. *See Hassan v. Independent Practice Assocs., P.C.*, 698 F.Supp. 679 (E.D.Mich.1988). This is so because "[m]arket power means the ability to injure consumers by curtailing output and raising price; no possible injury, no market power; no market power, no violation; injury to consumers is therefore an essential ingredient of liability." *Drs. Steuer & Latham*, 672 F.Supp. at 1504 (quoting *Fishman v. Estate of Wirtz*, 807 F.2d 520, 568 (7th Cir.1986) (Estabrook, J. dissenting in part)).

■ The court has reviewed all the evidence which Capital has submitted in support of its argument that defendants have substantial market power in the "market for radiology referrals within a radius of 100 miles from Albany, New York." In this regard, plaintiff offers the following statistics:

(1) *75–80% of the primary care physicians* in *Schenectady County* are members of the Associates

(2) *64% of all physicians* in *Schenectady County* are members of the Associates

(3) *69% of all physicians* in *Montgomery County* are members of the Associates

(4) *82% of all physicians* in *Saratoga County* are members of the Associates

(5) *15 of 17 radiologists* in *Schenectady County* are members of the Associates

(6) *15 of 20 radiologists* in *Rensselaer County* are members of the Associates

(7) 6 physicians who are Associates' members made the largest number of referrals to Two Rivers from Schenectady County—more than 50 procedures each in 1990

*See* Plaintiff's Memorandum of Law at 17–18; Fitzgerald Affidavit at ¶ 5.

At first glance these statistics would appear to support plaintiff's contention that defendants have significant market power.

However, on closer examination it becomes evident that these figures account for only a very small percentage of the consumers [7] and the services at issue in the relevant antitrust market. In an attempt to put Capital's figures into perspective, defendants point out that:

(1) they enroll *100,500 members* in the relevant geographic area which contains *54 HMOs* with *4,196,806 enrollees*

—thus defendants have only *2.3% of the HMO enrollees* within 100 mile radius of Albany

—in addition these 100,500 members compose only *1.15% of the total population* of the counties within 100 mile radius of Albany

(2) they contract with *1,410 physicians* which is *6.75% of the 20,880 licensed physicians* in the counties within 100 miles of Albany

*See* Defendants' Reply Memorandum of Law at 25.

Capital does not contest the accuracy of defendants' figures. Rather, Capital attempts to avoid the issue of market power by stating that, at this time, it does not have to establish a uniform concentration of defendants' activities at each location within the 100 mile radius nor does it have to establish the exact contours of the market at this time. *See* Plaintiff's Reply Memorandum at 4. In support of this position, plaintiff cites *Thompson v. Metropolitan Multi–List, Inc.*, 934 F.2d 1566, 1573–74 (11th Cir.1991), for the proposition that "[t]he parameters of a given market are questions of fact, and therefore summary judgment is inappropriate if there are material differences of fact ..." However, *Thompson* is not dispositive of the present case. In *Thompson*, the parties disagreed about the appropriate boundaries of the relevant market. It was this dispute which in the court's mind created the material questions of fact that made summary judgment inappropriate. To the contrary, in this case, the parties do not dispute the contours of the relevant market. In fact, quite the opposite is true. Defendants ap-

---

7. This is true whether "consumer" is defined as the HMO's enrollees or as the primary care physicians within a 100 mile radius of Albany, N.Y. who make radiology referrals.

pear ready to concede to any definition of the relevant market that plaintiff asserts. Under these circumstances, the court concludes that there are no material issues of fact concerning the relevant market which would make summary judgment inappropriate.

▇▇▇▇ Furthermore, the issue here is not the relevant market but rather the effect of defendants' actions on competition in this market. Although this does not necessarily require that plaintiff perform a detailed market analysis, failure to do so may be fatal to a section 1 claim unless there is proof of "actual detrimental effects, such as a reduction of output [or an increase in prices which could] obviate the need ... [for such] elaborate market analysis." *Oltz v. St. Peter's Community Hospital,* 861 F.2d 1440, 1448 (9th Cir.1988) (quoting *Federal Trade Commission v. Indiana Federation of Dentists,* 476 U.S. 447, 460–61, 106 S.Ct. 2009, 2018–19, 90 L.Ed.2d 445, 457–58 (1986)). Capital has come forward with no proof that defendants have the ability to increase prices or decrease output in this market—either of which would constitute actual detrimental effects sufficient to demonstrate that defendants possess market power. Accordingly, the court concludes that Capital has failed to meet its burden with respect to this essential element of its claim that defendants' actions constitute an unreasonable restraint of trade.

#### c. *Amount of Competition Foreclosed*

▇▇▇ With regard to this last element, Capital has presented no clear evidence of the degree of competition it claims has been foreclosed by defendants' actions. However, the court has been able to reach a conclusion on this issue based on the uncontroverted statistics provided by defendants. Even using plaintiff's definition of "consumer" as those primary care physicians within a 100 mile radius of Albany, New York who make radiology referrals, the fact remains that defendants contract

with less than 6.75% of these physicians.[8] In addition, none of these physicians are precluded by their contracts with defendants from referring their non-HMO patients to Capital. The fact that they may choose not to, as plaintiff alleges, cannot be traced to defendants' actions. Thus, absent any evidence to the contrary, this court holds that even if it were to conclude that defendants' actions have foreclosed some competition, the effect of this foreclosure would be minimal in nature and would not rise to the level of an unfair restraint of trade. Accordingly, the court concludes that plaintiff has failed to meet its burden with respect to this essential element of its claim that defendants' actions constitute an unreasonable restraint of trade.

#### C. *Absence of Genuine Issues of Material Fact*

This court granted plaintiff's motion to continue this action pending discovery limited to three factual issues that Capital contended were relevant to the question of the impact of defendants' actions on competitive conditions in the relevant market. Plaintiff has completed its discovery but has failed to unearth evidence sufficient to establish the existence of the elements essential to its section 1 claim on which it would bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. At most, plaintiff has demonstrated that it has been injured by defendants' actions. Even if this is true, however, injury to a competitor is not antitrust injury. *See Capital Imaging,* 725 F.Supp. at 677.

The court will take a moment to review plaintiff's evidence with respect to each of the factual issues upon which Capital sought discovery. First, although it may be true that Associates' network of participating physicians has significantly penetrated a very small portion of the relevant market, the fact remains that they contract with only 6.75% of the licensed physicians

---

**8.** This 6.75% figure is based on the total number of licensed physicians in the relevant geographic market. Obviously, not all of these physi-cians can be characterized as primary care physicians.

within this same market, compete with 53 other HMOs, and enroll only 2.3% of the HMO enrollees in this area. Secondly, plaintiff has not even attempted to identify Two Rivers' market share. Its single conclusory statement that 6 physicians in Schenectady County who are members of the Associates had the greatest number of referrals to Two Rivers, while it may be relevant, is certainly not dispositive of this issue. Finally, plaintiff alleges that the purpose of the arrangement between defendants and Two Rivers is to limit the radiology referrals to Associates' members, thereby preventing Capital from obtaining such referrals. As stated above, however, this is the normal consequence of any contract between a buyer and a seller and is not unlawful. Moreover, Two Rivers is not a member of the Associates and thus, like Capital, has no access to radiology referrals from the Associates' member physicians. In conclusion, Capital has failed to demonstrate that these facts create any genuine issue of material fact concerning the impact of defendants' actions on competitive conditions in the market for radiology referrals within a 100 mile radius of Albany, New York. Therefore, because plaintiff has failed to establish the existence of either a conspiracy or an unreasonable restraint of trade, essential elements of its section 1 claim, there can be no genuine issues of material fact. Accordingly, the court grants defendants' motion for summary judgment.

### D. *Plaintiff's State Claims*

 In addition to its federal cause of action, plaintiff asserts two state causes of action alleging the same activities as violations of section 340 of the New York State General Business Law and the New York State common law against unfair competition. The court need not spend much time discussing these state claims. The only basis for this court's jurisdiction over such claims is the doctrine of pendent or supplemental jurisdiction. Having dismissed plaintiff's federal cause of action, it is with-

in the court's discretion to decline to exercise its jurisdiction over these state claims. *See Castellano v. Board of Trustees*, 937 F.2d 752, 758 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991); *Powell v. Gardner*, 891 F.2d 1039 (2d Cir.1989).[9] Accordingly, the court declines to exercise its supplemental jurisdiction over these state claims and dismisses them.

### IV. CONCLUSION

For the reasons stated above, the court concludes that plaintiff has failed to establish that defendants' activities violated Section 1 of the Sherman Act. Accordingly, the court grants defendants' motion for summary judgment. In addition, because the court finds that allowing plaintiff to amend its complaint would be futile, the court denies plaintiff's cross-motion to amend ¶ 7 of its complaint. Finally, the court declines to exercise its jurisdiction over plaintiff's state claims and therefore dismisses them.

IT IS SO ORDERED.

---

**9.** Subsequent to the commencement of this action, this principle was codified at 28 U.S.C. section 1367, effective December 1, 1990.